UNITED STATES of America, Plaintiff,

v.

REAL PROPERTY: 835 SEVENTH STREET RENSSELAER, RENSSELAER COUNTY, NEW YORK, Defendant.

No. 91–CV–999.

United States District Court, N.D. New York.

Aug. 30, 1993.

---

Gary L. Sharpe, U.S. Atty., N.D. New York, Albany, NY, for plaintiff; William C. Pericak, Asst. U.S. Atty., of counsel.

Richard Habiniak, pro se.

Hollie E. Bethmann, Albany, NY, for claimant Habiniak.

### MEMORANDUM–DECISION and ORDER

McAVOY, Chief Judge.

On April 24, 1993 this court issued a Memorandum–Decision and Order addressing claimant's Eighth Amendment defense to the instant forfeiture. *See United States v. Real Property: 835 Seventh Street Rensselaer,* 820 F.Supp. 688 (N.D.N.Y.1993). Therein, the court treated claimant's defense as a cross-motion for summary judgment and, applying the test enunciated in *United States v. Certain Real Property and Premises Known as 38 Whalers Cove Drive,* 954 F.2d 29 (2d Cir.1992), *cert. denied sub nom., Levin v. United States,* —— U.S. ——, ——, 113 S.Ct. 55, 61, 121 L.Ed.2d 24 (1992) (*"Whalers Cove"*), found that the putative forfeiture violated the Eighth Amendment and therefore granted summary judgment in claimant's favor. *See generally Real Property: 835 Seventh Street,* 820 F.Supp. 688. The United States ("the government") now moves for reconsideration arguing four points. The first point is a procedural challenge to the court's decision to grant claimant summary judgment, asserting that the court improperly converted claimant's defense to a cross-motion for summary judgment and, in doing so, denied the government the opportunity to defend against the cross-motion. The second point is a substantive one, arguing that a

recent Supreme Court decision alters the applicable standard used by this court in applying the Eighth Amendment. The third point challenges this court's prior ruling with regard to an essential element of Second Circuit's Eighth Amendment analysis. And the fourth point addresses alternative relief, asserting that the court should have considered the option of mitigation or remission with regard to forfeiture.

Based upon the arguments submitted and upon an intervening decision of the Supreme Court on pertinent issues, the court grants reconsideration in part but finds that the government's arguments are without merit or authority. The reasons for this conclusion are discussed *seriatim* below. Familiarity is assumed and the facts of the case will not be repeated.

## I. Discussion

### A. Treatment of Defense as Cross–Motion

 The government first argues that while the court was well within its discretion to treat claimant's constitutional defense as a cross-motion for summary judgment (*see* Govt's Brief, at 2), it did so in an improper fashion. In this regard, the government asserts that the court should have provided the

government with *prior notice of its decision* to treat the claimant's defense as a cross-motion thus allowing the government to supplement the record to show that more illicit activity than it had previously established was occurring or had occurred at the defendant location. The government argues that this evidence, especially when viewed in the light most favorable to the government, would have changed the proportionality analysis such to allow it to overcome the Eighth Amendment challenge. The court strongly disagrees.

To begin with, the court notes with emphasis that the government was the original moving party, thus requiring *it* to produce evidence which, even when viewed in the light most favorable to the non-movant, would have entitled it to summary judgment of forfeiture. Even though the motion for summary judgment of forfeiture as originally made required a significantly lower threshold of proof than after the Eighth Amendment defense was asserted,[1] the Eighth Amendment defense was asserted long before the court *sua sponte* treated the defense as a cross-motion.[2] Hence, once the defense was asserted, it should have been clear to the government that it could not succeed on the "run-of-the-mill" forfeiture/evidentiary show-

---

1. 21 U.S.C. § 881(a)(7) provides for the forfeiture of real property "which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of" a violation of the narcotics laws punishable by more than one year's imprisonment. *Whalers Cove*, 954 F.2d at 33. In order to succeed under 21 U.S.C. § 881(a)(7), the government need merely prove a "nexus" between drug activity and the property. *Id.* The government need not establish a predicate conviction, but only "probable cause" to believe that a crime punishable by a year or more has occurred. *See United States v. In re One 1987 Jeep Wrangler etc.*, 972 F.2d 472 (2d Cir.1992); *United States v. Certain Real Property and Premises known as 38 Whalers Cove Drive*, 747 F.Supp. 173, 175 (E.D.N.Y.1990), *aff'd* 954 F.2d 29, *cert. denied*, — U.S. ——, 113 S.Ct. 55, 121 L.Ed.2d 24 (1992). The probable cause standard requires the government merely to have "reasonable grounds to believe that certain property is subject to forfeiture. These grounds must rise above the level of mere suspicion but need not amount to what has been deemed 'prima facie proof.'" *United States v. Banco Cafetero Panama*, 797 F.2d 1154, 1160 (2d Cir.1986) (citations omitted). Consequently, to succeed on the

summary judgment of forfeiture motion, the government need merely have shown that there was no genuine question of material fact that there existed probable cause to believe that the defendant property had some nexus to drug activity.

By contrast, once the Eighth Amendment defense was asserted by the claimant, the government could not succeed on summary judgment until it established both the nexus discussed above *and* that there was no material question of fact that the prospective forfeiture would not violate the claimant's Eighth Amendment rights. As discussed in the court's prior decision, 820 F.Supp. at 695–97, this latter question entailed a complicated and fact specific analysis which required more concrete evidence than that required by the simple forfeiture standard.

2. Claimant first asserted the Eighth Amendment defense in his brief in opposition to the government's motion for summary judgment. *See* "Brief of Claimant, Richard Habiniak", Ct.Doc. # 62. Once asserted, the court granted the government's request to file a Memorandum of Law in reply to the Eighth Amendment defense. *See* "Reply Memorandum of the United States," Ct. Doc. # 66.

ing. *See* footnote 1, *supra.* Rather, the imposition of the Eighth Amendment defense required the government to show not only that there was no genuine issue of material fact with regard to the probable cause/nexus element of forfeiture, *but also* that the putative forfeiture was not so disproportionate as to violate the claimant's Eighth Amendment right.[3] Therefore, even as a movant the government had an obligation to come forward with evidence to rebut the defense asserted by the claimant.[4] Yet, throughout the extended course of this litigation, the government failed to amend or supplement its factual argument, instead waiting until after the court ruled against it to attempt to do so.

This new "lack of notice" argument falls on deaf ears as the court finds that there was adequate notice to the government that the court was considering the defense as a potentially dispositive mechanism in the case. Indeed, following oral argument held on October 13, 1992 wherein the court addressed the substantiality element of the *Whalers Cove* decision, the court asked claimant's counsel if she intended to make a cross-motion for summary judgment on the Eighth Amendment issue. In this regard, the court indicated that such a procedural posture could potentially dispose of the case short of a trial. While this discussion was not captured on the record, it is the court's memory that the attorney representing the government agreed with the court that a cross-motion would be most beneficial to resolution of the matter. Of course, no such motion was made by the claimant and the court can only speculate as to counsel's decision to ignore such a

pointed suggestion.[5] But the colloquy between the court and the claimant's counsel did, at the very least, put the government on notice that the court was considering the Eighth Amendment defense as a potentially dispositive mechanism in the case.

Still further, plaintiff was given adequate opportunity to address the court on the issues relating to the proportionality analysis of *Whalers Cove*. On October 13, 1992, the court ordered "further briefing" on the proportionality issue. Order from the bench, 10/13/92 (*see* footnote 5, *supra*). When the court reviewed these briefs and found that they did not address an important issue in the *Whalers Cove* proportionality analysis, the court again ordered further briefing. *See* 11/17/92 Order. To now argue that it did not have notice or the opportunity to fully supplement the record is disingenuous. In a manner of speaking, the government attempts to close the barnyard door after the horse has escaped.

■ Yet, even assuming that the government had not presented its strongest argument, the court finds that the now-proffered evidence, even when viewed in the light most favorable to the government, does not alter the final determination. First, it is clear from the April 24, 1993 decision that the court viewed the facts in the record in the light most favorable to the government. *See Real Property: 835 Seventh Street,* 820 F.Supp. at 691–92.

Second, the substance of the information the government now seeks to introduce *was*

---

3. The court does not maintain that the government bore the ultimate burden of proof on the Eighth Amendment issue. However, as a movant for summary judgment, once the defense was asserted, the government could not succeed on the motion absent a showing by the government, the movant, that there existed no genuine issue of material fact sufficient to defeat summary judgment. In this context, this required a showing that the Eighth Amendment defense could not succeed.

4. Of course, the court assumes that the original motion was made in a good faith belief that it could succeed (*see* Fed.R.Civ.P. 11), and therefore there can be no doubt that the government put forth its full effort to succeed on the motion. That being the situation, it is inconsistent for the

government to now argue that "if it had known," it would have presented a stronger argument.

5. The courts docket sheet reflects the following minutes taken by the courtroom deputy with regard to the October 13, 1992 motion:

Govt/Pltf motion for summary judgment of Forfeiture—RESERVED; JUDGE FINDS PROPERTY WAS USED SUBSTANTIALLY FOR RESIDENTIAL PURPOSES AND DIRECTS FURTHER BRIEFING BE SUBMITTED WITHIN 3 WEEKS FROM TODAY (11/3/92). NO RESPONSE TIME GIVEN; BOTH BRIEFS ARE DUE AT SAME TIME; **CLAIMANT TO MAKE CROSS-MOTION FOR SUMMARY JUDGMENT,** . . . . (emphasis added).

before the court prior to the summary judgment motion.[6] In fact, the Verified Complaint for Forfeiture *In Rem* contained at exhibit 1 an affidavit of Detective/Sergeant Smith attesting to the very facts the government now seeks to "introduce." Further, the evidence had been alluded to by the government in answers to interrogatories, in opposition to claimants' motions for judgment on the pleadings,[7] and in opposition to the claimant's suppression motion. Consequently, the court was well aware that this information existed and that it formed the basis of the government's investigation and eventual arrest of the claimant. Yet, the court did not believe then, nor does it believe now, that such information is of probative value within the *Whalers Cove* proportionality analysis.

And third, the court finds that the proffered evidence does not change the outcome of the *Whalers Cove* proportionality analysis. Indeed, the information the government now seeks to introduce amounts to, at most, speculative and conjectural allegations as to what occurred at the defendant residence prior to a criminal investigation. While such evidence could support a finding of summary judgment of forfeiture (a legal conclusion the court assumed in order to reach the Eighth Amendment analysis), it does little to further the fact-specific Eighth Amendment analysis of *Whalers Cove*. No fact-finder could use such information to proportion the amount of drugs against the value of the defendant property on summary judgment or otherwise.[8] There is no evidence which establish-

6. The government seeks to introduce the following:

1) **"Very Concerned Citizen's List/Note:"** A typed-written list of approximately 90 vehicle license plate numbers and a note indicating that these vehicles stopped at the defendant residence for brief periods of time. The court cannot ascertain the time frame of these observations from the copy of the note provided to the court. The note indicates that it is the writer's belief that drug transactions occurred during the brief stops. The note is signed merely as "A Very Concerned Citizen." The note is redacted in part. The note also assumes certain knowledge, indicating to the court that it was made in reference to a prior conversation.

2) **"Talbot Note:"** A hand-written note from Bob Talbot, supposedly a DEA special agent, to a "Capt. Marring." The note references the List/Note, above, and indicates that the writer "ran *most of the license plates and only found one [he was]* familiar with...." The remainder of the note states the writer's beliefs as to what might occur if an investigation is conducted. The note does not appear to be an official memorandum nor is it discernable whether it was prepared in the course of official government business.

3) **"Intelligence Report:"** A one page report dated 09/16/88 indicating that the DEA had received information from a reliable source that the claimant was "dealing cocaine [and] growing cannabis" at the defendant property. The allegations are not supported in any manner.

4) **Deposition Transcript of Rensselaer Police Sergeant Steven Smith:** Deposition of police officer describing investigation, arrest, and execution of warrant in connection with claimant's state court criminal charges.

5) **Deposition Transcript of DEA Special Agent Ulises Delgado:** Deposition transcript of a recalcitrant witness whose testimony amounted merely to an indication that the DEA had received information from an informant that the claimant was believed by the informant to be dealing and/or cultivating marijuana.

7. At one time during the litigation, there were a number of claimants asserting various defenses to the government's proposed forfeiture of the defendant property. These other claimants were dismissed from the action for lack of standing. *See* Order, 08/20/92.

8. On a motion for summary judgment, the court "must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party." *Gibson v. American Broadcasting Cos.*, 892 F.2d 1128, 1132 (2d Cir.1989). However, the court must also inquire whether "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986), and grant summary judgment where the nonmovant's evidence is merely colorable, conclusory, speculative or not significantly probative. *Id.* at 249–50, 106 S.Ct. at 2510–11; *see Knight v. United States Fire Ins. Co.*, 804 F.2d 9, 12–15 (2d Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). Thus, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *see Delaware & H.R. Co. v. Conrail*, 902 F.2d 174, 178 (2d Cir.1990) (quoting *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512 and *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1355). "The non-movant cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material fact, or defeat the motion through mere speculation of conjecture." *Western World Insurance Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir.1991).

es that more drugs were involved at the defendant location than the court calculated in its April 24, 1993 decision.

To use the proffered information as evidence of the amount of drugs involved at the defendant property would render the *Whalers Cove* decision an exercise in futility. No Eighth Amendment protection would ever attach if the government is permitted to support its position through mere innuendo. The practical effect would be to denigrate the fact-finding determination of *Whalers Cove* into a mud-slinging contest—a result that this court is sure the Circuit did not intend.

For these reasons, the court finds no merit to the government's first argument. Consequently, the government's motion for a vacatur of the prior decision on this ground is denied. The court will grant the government's motion to supplement the record for purposes of appeal.

### B. Application of Austin v. United States

■ Second, the government argues that under the concurring opinion of Justice Scalia in *Austin v. United States*, —— U.S. ——, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), the proper inquiry when applying the Eighth Amendment to a civil forfeiture is not a comparison of the relative value of the defendant property to the drugs sold, but rather a determination of the degree of relationship between the two. Under this test, the government asserts, the instant forfeiture would not violate the claimant's constitutional right secured by the Eighth Amendment.

The court need not reach this issue nor comment on Justice Scalia's concurring opinion. The majority opinion in *Austin* clearly and unequivocally stated that it was for the circuit courts to fashion appropriate tests to determine whether a forfeiture is constitutionally excessive (*Austin, supra,* at ——, 113 S.Ct. at 2812) and in this Circuit *Whalers*

*Cove* controls. Reconsideration on this ground is denied.[9]

### C. Substantiality

■ Third, the government argues that under the *Whalers Cove* analysis, a question remains as to whether the defendant property was used substantially for illegal purposes. In this regard, the government argues that the defendant property was an instrumentality of the underlying drug transaction and therefore Eighth Amendment protection should not apply. The court again disagrees.

The parties have already discussed and the court has already determined the substantiality issue and found in favor of the claimant. *See Real Property: 835 Seventh Street,* 820 F.Supp. at 691. The case cited by the government, *United States v. Cullen,* 979 F.2d 992 (4th Cir.1992), does not change that determination and therefore reconsideration on this ground is denied.

### D. Mitigation or Remission

■ Finally, the government contends that the court should have considered the option of mitigation or remission in regard to the court's decision to deny forfeiture. While it is true that the court determined that the forfeiture decision was an all or nothing proposition (*see Real Property: 835 Seventh Street,* 820 F.Supp. at 696–97), the cases cited by the government in support of its remission or mitigation argument are unpersuasive. These dealt with criminal forfeiture under 18 U.S.C. § 1963, a statute which serves as punishment in *in personam* actions against individual criminal defendants. *See United States v. Sarbello,* 985 F.2d 716 (3rd Cir.1993); *United States v. Busher,* 817 F.2d 1409 (9th Cir.1987); *United States v. Huber,* 603 F.2d 387 (2d Cir.1979). As evidenced by the careful opinions in *Austin,* the doctrinal underpinnings of civil forfeiture, especially statutory *in rem* forfeiture, have developed separate and apart from those underlying the various forms of criminal punishments which

---

**9.** "There are generally only three circumstances under which a court will agree to reconsider a prior decision. To successfully prevail upon the court to reconsider, the moving party must show the existence of either: (1) an intervening change of controlling law; (2) the availability of new evidence; and/or (3) the need to correct a clear error or prevent manifest injustice." *Wilson v. Conrail,* 815 F.Supp. 585, 587 (N.D.N.Y.1993) (quoting *McLaughlin v. New York, Governor's Office of Employee Relations,* 784 F.Supp. 961, 965 (N.D.N.Y.1992)).

include criminal *in personam* forfeitures. Whether these doctrinal underpinnings have now converged into a single jurisprudence of "forfeiture" indistinguishable by their criminal or civil nature is a question left completely unanswered by controlling authority. No court has gone so far as to allow a wholesale transportation of the theories of one jurisprudence into the arena of the other.

Further, the superimposition of legal fiction upon legal fiction in the area of statutory *in rem* jurisprudence leaves a landscape of kaleidoscopic dimension. Where on one hand the defendant property, an inanimate object, is deemed to have offended society thus requiring its forfeiture (legal fiction # 1), the claimant, a third party to the action who has not been adjudicated culpable of a forfeitable crime under 21 U.S.C. § 881(a)(7), is able to assert his Eighth Amendment right, a right historically protecting criminal defendants against excessive fines and punishments, to prevent the *effect* that the removal will have upon him if forfeiture is allowed (legal fiction # 2). Now, the government asks this court to find, in essence, that while complete forfeiture of the guilty property (legal fiction # 1) violates the Eighth Amendment right of an innocent third party (legal fiction # 2), *limited* forfeiture does not offend the Constitutional rights of the third-person and therefore should be allowed (legal fiction # 3). While # 3 follows logically from # 2, it stands in complete contradiction to # 1. To allow mitigation or remission through the sale of the *property* wherein the government receives that *portion* of the proceeds which does not offend the third party's constitutional rights and the claimant receives the *remainder* pushes legal fiction # 2 to its logical extreme but simultaneously ameliorates legal fiction # 1. If the basic legal premise is that the guilty object must be removed for its offense, it contradicts reason to argue that this goal can be accomplished by selling the property and giving a *portion* to the government and the *remainder* to the claimant. Rather, this sounds of a criminal penalty for the claimant's wrongs as is the case under 18 U.S.C. § 1963. Until

such time as the Second Circuit, the Supreme Court, or Congress applies the principles of mitigation and remission as recognized in criminal forfeitures under 18 U.S.C. § 1963 to civil forfeitures under 21 U.S.C. § 881(a)(7), this court is not prepared to go that far. Therefore, the court declines to grant remission or mitigation and the government's motion in this regard is denied.

### E. Mootness

■ As a closing issue, the court notes that claimant has presented another procedural obstacle to final resolution of this case. On July 20, 1993 this court received a one-and-a-half page Memorandum of Law in Opposition to the government's Supplemental Motion for Reconsideration and a one page Affidavit from claimant's attorney. The attorney's affidavit states, *inter alia:*

> In or around May, 1993, your Affiant spoke to attorney Joseph LaCarte, attorney for the City of Rensselaer. At that time, Mr. LaCarte advised your Affiant that an *in rem* tax proceeding had been commenced against the Defendant property in February, 1992. According to Mr. LaCarte, a Court Order and Judgment executed by the Hon. M. Andrew Dwyer, Jr., Rensselaer County Court Judge, in April, 1993, conveyed title to the Defendant property from Claimant Richard Habiniak to the City of Rensselaer. Therefore, at this point in time, the instant proceeding is moot.

Affidavit of Hollie E. Bethmann, 7/19/93.

While it ostensibly appears that claimant has abandoned his claim in the defendant property,[10] the government contends that a right of redemption exists and that this right is exercisable by either the claimant or the government. On this ground, the government contends that the matter is not moot and that a legally cognizable case or controversy continues to exist before the court. The court is inclined to agree with the government.

---

**10.** Absent legal title to the property, claimant can assert no Eighth Amendment right in the property's forfeiture.

Until such time as the defendant property is sold at a foreclosure sale, the claimant or the government (provided the government succeeds with forfeiture) can exercise a right of redemption in the defendant property. Therefore, the matter is not moot and dismissal is not warranted. However, a question remains as to whether the claimant has abandoned his claim in the defendant property. The representation of counsel, in this instance, will not be taken at face value and instead the court will hold a conference with the parties to address this issue.

## II. CONCLUSION

For the reasons discussed herein, it is hereby

**ORDERED** that the government's motion for reconsideration is granted in part and denied in part; and it is further

**ORDERED** that the relief sought by the government in its partially granted motion for reconsideration is denied in all respects except that the government's motion to supplement the record is granted; and it is further

**ORDERED** that a conference is to be held with the court on Wednesday, September 8th, 1993 at 12:30 p.m. at the United States Court House, Albany, New York. Attorneys for the government and the claimant, as well as the claimant himself, shall be present.

**IT IS SO ORDERED.**